FILED
2014 Jan-17  PM 03:03
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER CAETIO and<br>CECELIA THOMPSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-13-S-1634-NE |
| | ) | |
| SPIRIT COACH, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDERS

Plaintiffs, Jennifer Caetio and Cecelia Thompson, assert race and gender discrimination and retaliation claims against their former employer, Spirit Coach, LLC, pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981.[1]  Plaintiffs also assert a claim for violations of the Equal Pay Act of 1963, 29 U.S.C. § 206.[2]  The case presently is before the court on defendant's motion to dismiss plaintiffs' complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.[3]

## I.  STANDARD OF REVIEW

---

[1] *See* doc. no. 1 (Complaint).

[2] *See id.*

[3] Doc. no. 6 (Motion to Dismiss).

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). That rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp.*, 550 U.S.] at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Iqbal*, 556 U.S. at 678 (alteration supplied).

As always is the case in the context of ruling upon a motion to dismiss, the district court is required to assume that

> the facts set forth in the plaintiff's complaint are true. *See Anza* [*v. Ideal*

*Steel Supply Corp.*], 547 U.S. 451, [453,] 126 S. Ct. [1991,] 1994 [(2006)] (stating that on a motion to dismiss, the court must "accept as true the factual allegations in the amended complaint"); *Marsh v. Butler County*, 268 F.3d 1014, 1023 (11th Cir. 2001) (*en banc*) (setting forth the facts in the case by "[a]ccepting all well-pleaded factual allegations (with reasonable inferences drawn favorably to Plaintiffs) in the complaint as true").

*Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1281 n.1 (11th Cir. 2006)

(alterations supplied).  Even so,

the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Bell Atlantic Corp.*, 550 U.S.] at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).

*Iqbal*, 556 U.S. at 678 (alteration supplied).

## II.  ALLEGATIONS OF PLAINTIFFS' COMPLAINT

### A.    Plaintiffs' Employment with Defendant

Plaintiff, Jennifer Caetio ("Caetio"), who held a commercial driver's license ("CDL"), was employed as a tour bus driver at defendant's location in Madison, Alabama on January 11, 2009.[4]  Approximately one year later, on February 11, 2010,

---

[4] *See* doc. no. 1 (Complaint) ¶ 7.

plaintiff, Cecelia Thompson ("Thompson"), was also hired as a CDL tour bus driver.[5]

## B.   Plaintiffs' Meetings with Robert Coates and Jamie Wilson

Plaintiffs allege that, during their employment with defendant, white, male drivers, holding their same positions, were assigned the more lucrative driving assignments — those requiring more work hours and, therefore, paying a greater amount to the driver.[6]  Because of this alleged disparate treatment, plaintiffs met with Robert "Clip" Coates, the CEO and their supervisor, on January 24, 2011, to voice those complaints.[7]  Buck Clemons, one of plaintiffs' co-workers, was also present at that meeting.[8]

The next day, plaintiffs met with Safety Manager, Jamie Wilson, to discuss the issues presented during their prior meeting with Coates.[9]  Plaintiffs allege that Wilson was angry that they had met with Coates, and that, in retaliation, he issued a written reprimand concerning accidents that had occurred months before, and placed them on probation.[10]  Plaintiffs contend that, at that time, defendant did not have a written policy governing accidents or discipline, and that this was the first disciplinary action

---

[5] *See id.* ¶ 8; *see also* doc. no. 6-1 (April 12, 2011 EEOC Charge of Discrimination filed by Cecelia Thompson).

[6] *See* doc. no. 1 (Complaint) ¶ 10.

[7] *See id.* ¶ 11.

[8] *See id.* ¶¶ 11-12.

[9] *See id.* ¶ 13.

[10] *See id.* ¶¶ 15-17.

4

defendant had taken against them.[11]  Further, plaintiffs allege that male co-workers involved in similar accidents were not written up or placed on probation.

Caetio again complained of discrimination on January 26, 2011, when she voiced her concerns over the fact that new jobs were created for former co-workers of Safety Manager Wilson, that new male employees were assigned a greater number of work hours, and that different requirements were demanded of plaintiffs than of their new male co-workers.[12]  The complaint does not state to whom Caetio voiced those complaints.  Plaintiffs allege that, following their complaints, they "became the target of threats and harassment" from Safety Manager Wilson.[13]

## C.    Thompson's Termination

There is conflicting evidence as to the date defendant terminated Cecelia Thompson's employment.  The complaint states that "Thompson was wrongfully terminated in January, 2012,"[14] whereas Thompson's second EEOC charge states that "her employment was terminated on February 2, 2011 . . . ."[15]  In plaintiffs' response to the motion to dismiss, plaintiffs state that Thompson was terminated on February

---

[11] *See* doc. no. 1 (Complaint) ¶¶ 18, 22.

[12] *See id.* ¶ 23.

[13] *See id.* ¶ 24.

[14] *See id.* ¶ 50.

[15] *See* doc. no. 6-2 (June 16, 2011 EEOC Charge of Discrimination filed by Cecelia Thompson).

2, 2011.[16]   Thus, for purposes of the motion to dismiss, this court will assume

Thompson's termination date was February 2, 2011.

**D.      Thompson's EEOC Charges**

Thompson's first EEOC charge was filed on April 12, 2011.[17]   The boxes

entitled "Sex" and "Other" were checked, but the boxes for "Race" and "Retaliation"

were not.[18]   In that charge of discrimination, Thompson stated as follows:

> I was hired by the above named employer on February 11, 2010
> in the position of Driver.   Since October 2010, there has been an
> ongoing issue concerning the job assignment of male drivers being
> assigned the most lucrative assignments, receiving more work hours,
> and disparate treatment in requirements in job performance, in lieu of
> female drivers.   During a meeting that was held on January 24, 2011, I
> complained About [*sic*] the above mentioned issues to the CEO, Robert
> Coates.   In retaliation for my complaining, I became the target of threats
> and harassment from the Safety Manager, Jamie Wilson.
>
> No reason was given to me for the disparate treatment that I was
> receiving.   I have twenty-two years experience as a driver.
>
> I believe I am being discriminated against because of my sex,
> Female, in violation of Title VII of the 1964, Civil Rights Act,
> amended.[19]

---

[16] *See* doc. no. 8 (Response to Motion to Dismiss), at 14.

[17] *See* doc. no. 6-1 (April 12, 2011 EEOC Charge of Discrimination filed by Cecilia Thompson).

[18] *See id.*

[19] *See id.*

Thompson filed a subsequent EEOC charge on June 16, 2011.[20]  In this charge, only the box for "Retaliation" was checked.[21]  That second charge of discrimination read as follows:

I filed a complaint with the EEOC via letter dated January 28, 2011 because of retaliation I received after a meeting on January 24, 2011, wherein I complained of disparate treatment as it related to issues of job assignment, wage, work hours, and job requirement[s] between male and female drivers to the CEO of the company, Mr. Robert Coates. After my discussion with Mr. Coates, I was called into a meeting with Jamie Wilson, Safety Manager, where I was informed that he was instituting a new policy about having accidents on the buses.  I was given a written warning for an accident I had over a year ago and told that I would be terminated if I had an accident during 2011.  None of the males who had accidents were given warnings nor were they threatened with termination.  My employment was terminated on February 2, 2011, by Jamie Wilson.

I was informed by Jamie Wilson that the decision to terminate my employment was made by the Safety Committee.

I believe I have been discriminated against in retaliation for filing a previous charge with the EEOC and in retaliation for complaining of disparate treatment between male and female drivers, I believe the conduct of my employer has violated my rights under Section 704(a) of Title VII of the 1964, Civil Rights Act, as amended.[22]

## E.    Caetio's Allegations of Discrimination

Unlike Thompson, Caetio only filed a single charge of discrimination with the

---

[20] *See* doc. no. 6-2 (June 16, 2011 EEOC Charge of Discrimination filed by Cecelia Thompson).

[21] *See id.*

[22] *See id.* (alteration supplied).

EEOC on April 15, 2011.[23]  In her charge, Caetio checked the boxes for "Retaliation" and "Sex" but not the box for "Race."[24]  In her charge of discrimination, Caetio stated as follows:

> I was hired by the above named employer on January 11, 2009, in the position of Driver.  Since October 2010, there had been an ongoing issue concerning the job assignment of male drivers being assigned the most lucrative assignments, receiving more work hours, and disparate treatment in requirements in job performance, in lieu of female drivers. During a meeting that was held on January 24, 2011, I complained about the above mentioned issues to the CEO, Robert Coates.  After my complaint, I became the target of threats and harassment from the Safety Manager, Jamie Wilson.  On January 25, 2011, I was retaliated against by being called into a meeting and given a written warning by Jamie Wilson, and placed on 6-months probation.
>
> I was told that I was being written up for accidents when the company does not have anything in writing concerning accidents.  Males who have actually had accidents have not been written up nor placed on probation.  I have eighteen years experience as a [d]river and believe the discipline was unwarranted.
>
> I believe I am being discriminated against because of my sex, Female, in violation of Title VII of the 1964, Civil Rights Act, as amended.[25]

In the complaint filed in this court, Caetio alleges that she was subjected to continuing discrimination.[26]  Specifically, Caetio contends that, on February 28, 2011,

---

[23] *See* doc. no. 6-3 (April 15, 2011 EEOC Charge of Discrimination filed by Jennifer Caetio).

[24] *Id.*

[25] *Id.*

[26] As discussed in Part III.A.3, *infra*, because Thompson was terminated on February 2, 2011, any claims asserted on behalf of "Plaintiffs" in the complaint after that date, may only be asserted

Safety Manager Wilson told her that male drivers were given preference due to "family responsibility," and that, therefore, males would be given the first choice for driving assignments.[27]   Caetio alleges that when she informed Coates of that conversation, she was taken off of dispatch.[28]

Caetio also claims that she was not allowed to take her son — who had a broken leg and could not stay at home alone — on a driving trip, following the April 27, 2011 storms that swept across the state, while a male driver's spouse was allowed to accompany him on a similar trip.[29]  After complaining about that incident, Caetio asserts that she was removed from the roster.[30]

Further, Caetio contends that she repeatedly inquired about a particular sixty-day assignment which was eventually given to four new male drivers.[31] Caetio claims that in August of 2011, Kevin Gipson, a male co-worker, was allowed to work eight hours in the office when not out on driving assignments so that he could still receive a full paycheck.[32]

---

by Caetio.

[27] *See* doc. no. 1 (Complaint) ¶ 25.

[28] *See id.* ¶ 26.

[29] *See id.* ¶¶ 28-30.

[30] *See id.* ¶ 31.

[31] *See id.* ¶¶ 27, 32.  In her complaint, Caetio stated that she inquired about this particular assignment on both April 14, 2011 and June 19, 2011.  *See id.*

[32] *See* doc. no. 1 (Complaint) ¶ 33.

Safety Manager Wilson held a meeting on September 19, 2011, in which he stated that "if your bus is assigned for a trip, then you will do that trip," however, Caetio alleges that her bus was repeatedly assigned for trips but with different drivers.[33]  Caetio also contends that other drivers were dispatched on trips shortly after she had been informed on September 25, 2011 that there were no trips.[34]

Because Caetio was not receiving driving assignments, she alleges that, as of November of 2011, she was forced to clean buses — a task that was less desirable than driving, because it not only required physical labor, but also paid less than a driving trip.[35]  Further, Caetio alleges that defendant hired new drivers from November of 2011 through January of 2012, even though she was not receiving driving assignments.[36]

Caetio alleges that on December 20, 2011, Kevin Gipson, a co-worker, sent a text message to Carl, another co-worker, which stated that Caetio would no longer receive hours at the shop.[37]  Further, Caetio contends that on January 16, 2012, Safety Manager Wilson stated that Coates "did not want any blacks working in the shop

---

[33] *See id.* ¶ 34.

[34] *See id.* ¶ 35.

[35] *See id.* ¶¶ 36-37.

[36] *See id.* ¶ 38.

[37] *See* doc. no. 1 (Complaint) ¶ 39.

because they were not happy with the last black employee they hired."[38]   Shortly

thereafter, Wilson allegedly told Caetio on January 30, 2012, that to prevent her from

receiving hours he would assign those jobs to an outside source.[39]   The next day,

Gipson informed her that Wilson had asked that she be taken off of the schedule for

her regular trips.[40]

Caetio was informed on February 17, 2011, that her involvement in a

Williamsburg trip would be "voted on," however, she alleges that the male driver

assigned to this trip was not similarly "voted on."[41]   The Complaint does not state

who informed Caetio of this voting arrangement.

Caetio also contends that she worked on a week-long assignment to

Washington D.C. with a male co-worker who, she claims, kept the entire tip, save for

$5.00.[42]   Caetio alleges that she complained about this incident and was told that it

would be reviewed, but she was never compensated.[43]   Further, Caetio informed

management that male drivers were stealing her tips on three additional occasions,

---

[38] *See id.* ¶ 40.

[39] *See id.* ¶ 41.

[40] *See id.* ¶ 42.

[41] *See id.* ¶ 43.

[42] *See* doc. no. 1 (Complaint) ¶¶ 44-45.

[43] *See id.* ¶¶ 46-47.

but the matter was never pursued.[44]   Caetio admits, however, that in May of 2011, defendant did attempt to correct a pay mistake.[45]

Throughout March of 2012, Caetio complained twice about the unfair driving assignments.[46]  The complaint does not state to whom Caetio voiced those complaints.

Shortly thereafter, defendant needed parts from Nashville, Tennessee.[47]  Caetio contends that she was willing to make this trip, however, Gipson, a co-worker, told her that she was not allowed to do so.[48]  Following her conversation with Gipson, Caetio alleges that she was threatened, and told that because she refused to drive to Nashville, Tennessee for the parts, she would not be assigned a later trip to Panama City, Florida.[49]  Caetio claims that she was subsequently taken off of the roster and not assigned any trips throughout the remainder of March of 2012.[50]

Caetio complained again of harassment, and about how such harassment was not properly addressed by defendant, in May of 2012.[51]

---

[44] *See id.* ¶ 48.

[45] *See id.* ¶ 49.

[46] *See id.* ¶ 51.

[47] *See* doc. no. 1 (Complaint) ¶ 52.

[48] *Id.*

[49] *See id.* ¶ 53.

[50] *See id.* ¶ 54.

[51] *See id.* ¶ 55.

Caetio claims that she was wrongfully terminated in August of 2012.[52]

## III.  DISCUSSION

Defendant argues in the motion to dismiss that plaintiffs' complaint should be dismissed for failure to exhaust administrative remedies for all of the race discrimination claims, and for the gender discrimination claims arising *after* April 15, 2011, for failure to properly plead their gender discrimination claims arising *before* April 15, 2011, for failure to exhaust administrative remedies for the retaliation claims, and for failure to assert a cognizable claim under the Equal Pay Act.[53]  Upon consideration, the motion to dismiss will be granted, but only in part.

If plaintiffs' complaint refers to documents that are central to their claims, the court may consider those documents as a part of the pleadings for purposes of a Rule 12(b)(6) dismissal.  *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *Venture Association Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).  Further, if defendant's motion to dismiss attaches those documents, the court need not convert that motion into a motion for summary judgment.  *Id*.

Here, plaintiffs' complaint alleges that defendant retaliated against them,

---

[52] *See* doc. no. 1 (Complaint) ¶ 56.

[53] *See* doc. no. 6 (Motion to Dismiss).

13

because they objected to and reported acts of racial and gender discrimination.[54]  As the EEOC charges are referenced in plaintiffs' complaint and are central to their claims, this court will consider those forms on defendant's motion to dismiss without converting the motion into a motion for summary judgment.

## A.    Title VII Claims

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer "to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, or national origin."  42 U.S.C. § 2000e-2(a)(1) (alteration supplied).

A plaintiff must satisfy a number of administrative prerequisites before filing a suit based upon Title VII.  Foremost among these is the requirement that a charge of discrimination be submitted to the Equal Employment Opportunity Commission within 180 days "after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1); *see also, e.g., Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000) ("No action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge."); *Stafford v. Muscogee County Board of Education*, 688 F.2d 1383, 1387

---

[54] *See id.* ¶ 78-79.

14

(11th Cir. 1982) ("In order to assert a claim of racial discrimination under Title VII, a claimant must file a complaint with the EEOC within 180 days after the alleged discriminatory practice occurred.").  "An individual must file a charge within the statutory time period and serve notice upon the person against whom the charge is made." *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). Failure to do so renders the claim time-barred. *See, e.g., Delaware State College v. Ricks*, 449 U.S. 250, 256 (1980); *Everett v. Cobb County School District*, 138 F.3d 1407, 1410 (11th Cir. 1998); *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792, 796-97 (11th Cir. 1992).

> Before a potential plaintiff may sue for discrimination under Title VII, she must first exhaust her administrative remedies. *See Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999).  The first step down this path is filing a timely charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5(b) (1994); *Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000).  For a charge to be timely in a non-deferral state such as Georgia [or Alabama], it must be filed within 180 days of the last discriminatory act.  *See* 42 U.S.C. § 2000e-5(e)(1) (1994); *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 197 (6th Cir. 1995).

*Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) (alteration supplied).

## 1.    Race discrimination

In Thompson's first EEOC charge, dated April 12, 2011, she checked the boxes

for "Sex" and "Other," but did not check the box for "Race."[55]  Further, in discussing the "Particulars" of her charge, Thompson did not mention race in any manner.[56] Instead, she concluded with the following statement: "I believe I am being discriminated against because of my *sex*, Female, in violation of Title VII of the 1964, Civil Rights Act, as amended."[57]  Likewise, her second EEOC charge, dated June 16, 2011, failed to mention race.[58]

Similarly, in Caetio's EEOC charge, only the boxes for "Sex" and "Retaliation" were checked.[59]  The face of the charge contained no reference to race discrimination and, instead, concluded as follows:  "I believe I am being discriminated against because of my *sex*, Female, in violation of Title VII of the 1964, Civil Rights Act, as amended."[60]

Defendant therefore asserts that plaintiffs have failed to exhaust administrative remedies for their race discrimination claims.  In response, plaintiffs make no attempt to salvage any race discrimination claims that might have been brought pursuant to

---

[55] *See* doc. no. 6-1 (April 12, 2011 EEOC Charge of Discrimination filed by Cecelia Thompson).

[56] *See id.*

[57] *See id.* (emphasis supplied).

[58] *See* doc. no. 6-2 (June 16, 2011 EEOC Charge of Discrimination filed by Cecelia Thompson).

[59] *See* doc. no. 6-3 (April 15, 2011 EEOC Charge of Discrimination filed by Jennifer Caetio).

[60] *See id.* (emphasis supplied).

Title VII of the Civil Rights Act of 1964.  Rather, plaintiffs contend that their race discrimination claims were asserted under 42 U.S.C. § 1981.  There are no administrative prerequisites to the maintenance of a § 1981 claim.  Neither the filing of an EEOC charge of discrimination within 180 days of the alleged unlawful employment practice as required by Title VII, see 42 U.S.C. § 2000e-5(e), nor "resort to Title VII's administrative machinery are . . . prerequisites for the institution of a § 1981 claim." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 460 (1975).  Accordingly, defendant's motion to dismiss is granted as to any race discrimination claims that plaintiff may have asserted pursuant to Title VII of the Civil Rights Act of 1964 for failure to exhaust administrative remedies, but it is denied as to any race discrimination claims premised upon 42 U.S.C. § 1981.

### 2.    Gender discrimination

Defendant argues that plaintiffs did not exhaust administrative remedies for their gender discrimination claims concerning allegedly discriminatory acts occurring *after* April 15, 2011 — the date that Caetio filed her charge of discrimination with the EEOC.  Defendant also contends that plaintiffs did not allege sufficient facts to support their gender discrimination claims for acts occurring *before* April 15, 2011. Each of defendant's claims will be analyzed below.

### a.    Failure to exhaust administrative remedies

As the Eleventh Circuit noted in *Basel v. Secretary of Defense*, 507 Fed. App'x 873 (11th Cir. 2013):

> The purpose of exhaustion is to permit the department the first opportunity to investigate the alleged discriminatory or retaliatory practices, and a plaintiff's judicial complaint is thereby limited by the scope of the investigation that can reasonably be expected to grow out of the administrative charge of discrimination or retaliation. *See Gregory v. Georgia Dep't of Human Res.*, 355 F.3d 1277, 1279-80 (11th Cir. 2004). The proper inquiry is, therefore, whether the plaintiff's judicial complaint was *like or related to, or grew out of*, the administrative allegations. *See id.* at 1280. Judicial claims are allowed if they "amplify, clarify, or more clearly focus" the charges made before the agency, and, given that we are reluctant to allow procedural technicalities to bar Title VII claims, the scope of the administrative charges should not be strictly construed. *See id.* at 1279-80 (quotation omitted).

*Id.* at 875-76 (emphasis supplied); *see also Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 162 (5th Cir. 1971) ("[T]he complaint in the civil action may properly encompass any discrimination *like or reasonably related to* the allegations [contained in the EEOC] charge and growing out of such allegations.") (alterations and emphasis supplied, citations and internal quotation marks omitted);[61] *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970) ("[T]he specific words of the charge of discrimination need not presage with literary exactitude the judicial pleadings

---

[61] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

which may follow.") (alteration supplied); *Cheek v. Western and Southern Life Insurance Co.*, 31 F.3d 497, 500 (7th Cir. 1994)  ("As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge . . . . Nevertheless, because most EEOC charges are completed by laypersons rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint.") (citations omitted).

While a plaintiff's complaint need not mirror her earlier EEOC charge, "allegations of new acts of discrimination that are offered as the essential basis for judicial review must nonetheless be presented to the agency." *Basel*, 507 Fed. App'x at 876 (citing *Ray v. Freeman*, 626 F.2d 439, 442-43 (5th Cir. 1980)).  Therefore, "[d]iscrete acts of discrimination that occur after an administrative filing must first be administratively reviewed before a plaintiff may obtain judicial review of those same acts." *Id.* (citing *Ray*, 626 F.2d at 442-43) (alteration supplied).  Termination, failure to promote, denial of transfer, or refusal to hire are readily identifiable examples of such discrete discriminatory acts.  *See National Railroad Passenger Corp.*, 536 U.S. at 114; *Basel*, 507 Fed. App'x at 876.

Plaintiffs allege in their EEOC charges that there was "an ongoing issue concerning the job assignment of male drivers being assigned the most lucrative

assignments, receiving more work hours, and disparate treatment in requirements in job performance, in lieu of female drivers."[62]   Plaintiffs further assert that in retaliation for voicing those complaints, they "became the target of threats and harassment from the Safety Manager, Jamie Wilson."[63]  The additional allegations of defendant's discriminatory acts occurring after April 15, 2011 are like or related to the allegations contained in those charges, because they "amplify, clarify, or more clearly focus" the manner in which defendant distributed driving assignments, defendant's practice of giving male employees more work hours, defendant's maintenance of disparate requirements between male and female employees, and plaintiffs' continued subjection to threats and harassment by Wilson.  *See Gregory*, 355 F.3d at 1280.  Therefore, this court will deny the portion of defendant's motion to dismiss resting on that ground.[64]

### b.    Failure to plead sufficient facts

Defendant also asserts that plaintiffs failed to allege sufficient facts for those acts occurring prior to April 15, 2011.

---

[62] *See* doc. no. 6-1 (April 12, 2011 EEOC Charge of Discrimination filed by Cecelia Thompson); doc. no. 6-3 (April 15, 2011 EEOC Charge of Discrimination filed by Jennifer Caetio).

[63] *See* doc. no. 6-1 (April 12, 2011 EEOC Charge of Discrimination filed by Cecelia Thompson); doc. no. 6-3 (April 15, 2011 EEOC Charge of Discrimination filed by Jennifer Caetio).

[64] As discussed in Part III.A.3, *infra*, because Thompson was terminated on February 2, 2011, any gender discrimination claims asserted on behalf of "Plaintiffs" in the complaint after that date, may only be asserted by Caetio.

The Supreme Court has held that the elements of a *McDonnell Douglas prima facie* case constitute "an evidentiary standard" for evaluating the sufficiency of a plaintiff's circumstantial proof of discrimination, "not a pleading requirement." *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002).  In other words, Federal Rule of Civil Procedure 8(a) requires only a short and plain statement of the plaintiff's claim, sufficient to give the defendant fair notice of what the plaintiff's claim is, and, the grounds upon which it rests, and it does not require the plaintiff to plead a *prima facie* case of discrimination in order to survive a defendant's motion to dismiss.

Since Caetio's claims of discriminatory acts taking place after April 15, 2011 are not due to be dismissed, those allegations may also be considered in determining whether plaintiffs pled sufficient facts to survive a motion to dismiss.  Even so, plaintiffs' complaint contains sufficient factual allegations occurring prior to April 15, 2011, to place defendant on fair notice of their claims for gender discrimination. As plaintiffs point out, they not only complain that similarly situated white, male drivers were assigned the more lucrative assignments — those assignments with more hours and therefore more pay — but also that, after voicing those complaints, plaintiffs were given a written reprimand and placed on probation, whereas males had not been reprimanded under similar circumstances.  Further, plaintiffs assert that supervisors were providing males with a right of first refusal on the lucrative driving

21

assignments, so that they could in turn satisfy their "family responsibility." Therefore, plaintiffs have presented facts sufficient to state a claim for gender discrimination. Accordingly, those claims will not be dismissed for failure to state a claim upon which relief can be granted.

### 3.   Retaliation

#### a.   Gender-based retaliation claims

##### i.   Thompson's retaliation claim

As defendant points out in its motion to dismiss, the complaint made allegations on behalf of both plaintiffs when such claims could not apply to Thompson because her employment with defendant had already ceased.  In response, plaintiffs agree that defendant terminated Thompson's employment on February 2, 2011; and, therefore, that "all of the events of retaliation that Cecelia Thompson complains she suffered occurred prior to April 15, 2011 . . . ."[65]  Accordingly, the court concludes that, to the extent the complaint asserted any claims of retaliation on behalf of Thompson (by using the generic term "Plaintiffs") occurring after February 2, 2011, those claims are dismissed.

##### ii.   Caetio's retaliation claim

Defendant argues that any retaliation claims arising after April 15, 2011 — the

---

[65] *See* doc. no. 8 (Response to Motion to Dismiss), at 14.

date Caetio filed her charge with the EEOC — are barred for failure to exhaust administrative remedies.[66]

As the court has repeatedly noted throughout this opinion, a plaintiff cannot maintain an action for Title VII discrimination without timely filing an EEOC charge, and, therefore, her complaint "is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge." *See Alexander*, 207 F.3d at 1332; *see also Gregory*, 355 F.3d at 1279-80.

Even so, "a claim of retaliation *could reasonably be expected to grow out of the original charge of discrimination*." *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988) (emphasis supplied); *accord Thomas v. Miami Dade Public Health Trust*, 369 Fed. App'x 19, 23 (11th Cir. 2010). As a result,

> it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court.
>
> There are strong practical reasons and policy justifications for this conclusion. It is the nature of retaliation claims that they arise after the filing of the EEOC charge. Requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case — a double filing that would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII.

---

[66] *See* doc. no. 6 (Motion to Dismiss), at 10.

*Gupta v. East Texas State University*, 654 F.2d 411, 414 (5th Cir. 1981) (citing

*National Organization for Women v. Sperry Rand Corp.*, 457 F. Supp. 1338, 1344 (D.

Conn. 1978); *Held v. Missouri Pacific Railroad Co.*, 373 F. Supp. 996, 1001 (S.D.

Tex. 1974)).

Because Caetio alleges that defendant retaliated against her for reporting acts

of discrimination to her supervisors, and for filing an EEOC discrimination charge,

her retaliation claim "grew out of" that charge.  Thus, Caetio was under no obligation

to file a separate EEOC charge in order to maintain a retaliation action in compliance

with Title VII.

### b.    Race-based retaliation claims

Defendant asserts that plaintiffs failed to exhaust administrative remedies for

any claim of race discrimination, including retaliation, because, as discussed in Part

III.A.1, *supra*, plaintiffs' EEOC charges only alleged gender discrimination and

retaliation arising from those complaints.   In response, plaintiffs contend that their

race-based retaliation claims were asserted pursuant to 42 U.S.C. § 1981, *not* Title

VII of the Civil Rights Act.  As noted previously, a plaintiff is not required to exhaust

administrative remedies before filing a § 1981 action in federal court.  *See Johnson*,

421 U.S. at 460.  Further, like Title VII, § 1981 applies to retaliation actions.  *CBOCS*

*West, Inc. v. Humphries*, 553 U.S. 442, 454 (2008).

24

Accordingly, defendant's motion to dismiss is granted as to any race-based retaliation claims that might have been asserted pursuant to Title VII of the Civil Rights Act, but it is denied as to plaintiff's race-based retaliation claims brought pursuant to § 1981.[67]

## B.    Equal Pay Act Claims

The Equal Pay Act was enacted in 1963, and made part of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*., under which it has been administered and enforced.  The text of the statute provides, in part, that:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex *by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work* on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (*i*) a seniority system; (*ii*) a merit system; (*iii*) a system which measures earnings by quantity or quality of production; or (*iv*) a differential based on any other factor other than sex: . . . .

29 U.S.C. § 206(d)(1) (emphasis supplied).  The Supreme Court has stated that "[t]he Equal Pay Act is broadly remedial, and it should be construed and applied so as to fulfill the underlying purposes which Congress sought to achieve."  *Corning Glass*

---

[67] As noted in Part III.A.3.a.i, *supra*, Thompson's allegations of retaliation occurred prior to her termination on February 2, 2011.  Therefore, to the extent the complaint asserted race-based retaliation claims on her behalf after that termination date, those claims are dismissed.

*Works v. Brennan*, 417 U.S. 188, 208 (1974) (alteration supplied).  Even so, as the Fifth Circuit has observed, the focus of the Fair Labor Standards Act ("FLSA"), of which the Equal Pay Act is but a part, "is on *wages* — minimum hourly rates and overtime pay — and not on working conditions or assignments."  *Berry v. Board of Supervisors*, 715 F.2d 971, 976 (5th Cir. 1983) (emphasis in original) (citing 29 U.S.C. §§ 206-207) (footnote omitted).

In their complaint, plaintiffs allege that "defendant company knowingly, intentionally and willfully violated the EPA . . . by refusing to book female employees on more lucrative trips, which resulted in more hours and wages," and by "allow[ing] male employees to steal the entire commissions from the female employees significantly reducing the amount the female drivers received."[68]

Plaintiffs have not asserted any facts alleging that they were paid "at a rate less than the rate at which . . . employees of the opposite sex" were paid.  *See* 29 U.S.C. § 206(d)(1).  Instead, plaintiffs' first claim concerns the manner in which the longer, more lucrative driving trips were assigned.  As the Fifth Circuit noted in *Berry*, the Equal Pay Act does not provide relief for allegations of discriminatory work *assignments.*  Thus, that claim is due to be dismissed.

Further, plaintiffs' allegation that male employees kept more than their share

---

[68] *See* doc. no. 1 (Complaint) ¶ 88 (alteration supplied).

of the commissions received during particular trips is not a cognizable claim under the Equal Pay Act, because such claim does not assert that *defendant* paid unequal wages to its employees.  Accordingly, this court finds that this claim must also be dismissed.

## IV.  CONCLUSION

Based on the foregoing, defendant's motion to dismiss is GRANTED in part and DENIED in part.  The motion is GRANTED as to any claims plaintiffs may have asserted for race discrimination or race-based retaliation pursuant to Title VII of the Civil Rights Act, any retaliation claims asserted by Thompson which concern events that took place after the date her employment was terminated, and plaintiffs' claims asserted pursuant to the Equal Pay Act.  It is ORDERED that those claims be, and the same hereby are, DISMISSED.  The motion is DENIED as to plaintiffs' claims for race discrimination asserted pursuant to 42 U.S.C. § 1981, plaintiffs' claims for gender discrimination, Caetio's claims for gender-based retaliation, and plaintiffs' claims for race-based retaliation asserted pursuant to § 1981.

Defendant must file an answer to plaintiffs' complaint on or before January 31, 2014.

DONE and ORDERED this 17th day of January, 2014.

27

United States District Judge